APPLETON MANUF'G CO. *v.* STARR MANUF'G CO. *et al.*

*(Circuit Court, N. D. Illinois.  July 23, 1892.)*

PATENTS FOR INVENTIONS—PATENTABILITY—CORN HUSKER.
    Letters patent No.. 290,571, issued December 18, 1883, to S. B. Goddard, for an improvement in the method of reducing corn in the stalk and separating the kernels, consisting of a cutter with feed rollers in front, a beater or thresher, a revolving screen or separator, and a shaking screen under it, all mounted in one frame, and so geared that the parts are driven by a single band wheel, are void, since it consists of old and well-known devices, not so combined as to form a single machine.

In Equity.  Bill by the Appleton Manufacturing Company against the Starr Manufacturing Company, Delos Dunton, and H. G. Sawyer, to restrain infringement of a patent.

*Offield, Towle & Linthicum,* for complainant.
*Raymond & Veeder,* for defendants.

GRESHAM, Circuit Judge.  This suit is brought for alleged infringement of letters patent No. 290,571, granted to S. B. Goddard, December 18, 1883, for certain new and useful improvements in the method of reducing corn in the stalk and separating the kernels.  The complainant is the assignee of the patent.  The invention is thus described in the specifications:

"My invention has relation to a new and useful method of reducing and separating corn from the stalk, husk, and cob; and the object is to take the stalk corn and so treat it at one operation that the grains will be separated from the cob, and at the same time the stalk, husk, and cob are cut up or comminuted and ready for use as stock food,—ensilage; or in this fine condition it may be plowed into the soil as a fertilizer without any further treatment; and to these ends the novelty consists in the method hereinafter described, and particularly set forth in the claims.  In carrying out my invention the result is accomplished by means of the devices shown in the accompanying drawings; but I do not wish to be understood as limiting myself to the means shown, as any mechanism which will produce the same result may be used.  *  *  *  It will thus be seen that the machine may be placed in the field, and the stalks of corn, being first cut down a few inches from the ground, may then be fed in suitable bunches to the feed rollers, C, C, and cutters which cut the stalks, ears, and husks into small pieces, and, as above stated, this cutting operation removed the greater portion of the grain from the cob, and the remaining adhering grains are entirely removed by the thrashing action of the cylinders, H, H, and the mass then passes into the revolving screen, I, where the corn and chaff or dirt pass through said screen, and fall into the shaker, L, while the stalks, husks, and cobs pass out the lower end upon the incline, K, thence to the ground.  The grain, corn, and chaff in falling into the shaker, L, is continually agitated, which sifts the chaff through the bottom, leaving the corn clean and clear, to be discharged through the opening, N."

The mechanism described for carrying out the process consists of a cutter with feed rollers in front, a beater or thresher, a revolving screen or separator, and a shaking screen under it, all mounted in one frame, and so connected or geared that the parts are driven by a single band wheel.  The two claims read:

"(1) The method herein described of reducing and separating corn in the stalk at a single operation, which consists—*First*, in cutting up the ears, husks, and stalks; *second*, in removing the remaining grain from the cobs; and, *finally*, in separating the clean grain from the stalks, cobs, and husks, as set forth. (2) The method herein described of reducing and separating corn in the stalks, which consists in cutting the corn, stalks, cobs, and husks at a single operation, and then removing the remaining grain from the cobs, as set forth."

The only difference between the claims is the omission in the second of the last step in the first. The first step of the process is performed by passing the stalks, with the ears attached, through the cutter having a stationary knife, and a revolving cylinder armed with knives. The chopped-up mass passes from the cutter down an inclined feed board to a thrasher or beater having revolving toothed cylinders, the speed of the upper one being greater than the lower one. This thrasher mashes or comminutes the sections of the stalks and cobs, and detaches from the latter any remaining grains of corn. This is the second step of the process. The cut and thrashed material is delivered from the thresher into the revolving screen, through the meshes of which the shelled corn drops into the shaking screen below, and the threshed mass of stalk, husks, and cobs escapes at the lower end. This is the third step. If the patent is valid, the complainant is entitled to a decree. The difference between the mechanism described for carrying out the process and the defendant's machine is merely structural. It is not true that the patent shows an integral machine. It describes three old and well-known devices,—a cutter, a thrasher, and a separator,—mounted on a platform in juxtaposition, and so geared as to be operated by a single band wheel, each device operating, however, just as before. They are not combined or incorporated into a single machine with all its parts coacting upon a common principle, or in obedience to a common law. The steps in the alleged process are the same, whether performed by a cutter, a thrasher, and a separator mechanically connected, as shown in the patent, or by the same old devices, or their equivalents, having no connection whatever, and widely separated. It is admitted that, in view of the prior art, Goddard was not entitled to a patent for his mechanism, and yet it is claimed that the patent covers the particular mechanism, and all equivalent means for practicing the invention. The complainant's expert and counsel have fallen into the error of assuming that the process is performed by a single machine at a single operation. If the old devices, operated separately, will accomplish the same result, (and it is not denied that they will,) there was no invention in their mere mechanical connection. If Goddard discovered anything, it was that old devices were capable of a new use.

The bill is dismissed for want of equity.